United States District Court
Northern District of Indiana

| | |
|---|---|
| JONATHAN P. LYNCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.  1:13-CV-271 JVB |
| v. | ) |
| | ) |
| ARAMARK CORR. SERVICES, LLC, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Jonathan P. Lynch, a *pro se* prisoner, filed a civil rights complaint which was removed from Allen Superior Court by the defendants. (DE 1, 2.) Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. In other words, the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). The court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

As an initial matter, the plaintiff seeks leave to file a proposed amended complaint. (DE 6.) Upon review, and in the interest of justice, the motion will be granted. *See* FED. R. CIV. P. 15(a). In the amended complaint (DE 6-1), the plaintiff alleges that while he was housed in the general population at Westville Correctional Facility ("Westville"), he received apple juice with his breakfast. When he was transferred to the segregation unit, Westville Control Unit ("WCU"), he stopped getting apple juice on his tray at breakfast. He claims that during the approximately six months he was in WCU, the defendants "without cause stopped including with my meal Apple Juice." He claims that because inmates in general population were receiving apple juice, this omission constitutes unlawful discrimination.

The plaintiff appears to be trying to raise a claim under the Fourteenth Amendment Equal Protection Clause. When an equal protection claim is not based on a protected class, such as race or gender, a prison may treat similarly situated inmates differently as long as the unequal treatment is rationally related to some legitimate state interest. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). This is not a demanding standard, and a challenged action will be upheld if there is some conceivable justification for it. *Hammer v. Ashcroft*, 570 F.3d 798, 801 (7th Cir. 2009); *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 685 (7th Cir. 2005). The court cannot find a challenged action irrational simply because it may seem unwise, unfair, or improvident. *Racine Charter One, Inc.*, 424 F.3d at 685. Furthermore, the court must afford prison officials "wide-ranging deference" in the day-to-day operations of a prison, particularly with regard to policies intended to preserve internal order and maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Here, the plaintiff does not allege a discriminatory motive on the part of prison officials, nor does he allege that he was discriminated against on the basis of race or some other improper ground. Rather, his claim is simply that it was unfair for inmates in general population to get apple juice with breakfast while he did not. However, while in segregation, the plaintiff was not "similarly situated" to inmates in the general population. *Racine Charter One, Inc.*, 424 F.3d at 680 ("To be considered 'similarly situated,' comparators must be *prima facie* identical in all relevant respects"). Segregation units often house the most dangerous inmates, and are, by their nature, considerably more restrictive.[1] *Walters v. Edgar,* 163 F.3d 430, 435 (7th Cir. 1998) ("Maximum security prisons are for the most dangerous prisoners. The segregation wards of these prisons are therefore intended for the most dangerous of the most dangerous."); *see also Lekas v. Briley,* 405 F.3d 602, 610-12 (7th Cir. 2005) (observing that inmates in segregation are permissibly subjected to far more restrictive conditions than those in general population, including inability to participate in prison programs, inability to attend church, drastic reduction in exercise and commissary privileges, and drastic reduction in the number and nature of personal items they are allowed to have in their possession).

It takes no great leap of the imagination to envision the many reasons that inmates in a segregation unit might not get all the same food items, food containers, or utensils as inmates in the general population, since these items could be used as weapons, tools of escape, or means of self-injury. *See Hammer*, 570 F.3d at 801 (approving of different treatment among inmates with

---

[1] In other cases, this court has recognized WCU as a "supermax" facility. *See Littler v. Ind. Dep't of Corr.,* No. 3:11-CV-218, 2013 WL 587901 (N.D. Ind. Feb. 12, 2013); *Smith v. Wilson,* No. 3:07-CV-338, 2007 WL 2903197 (N.D. Ind. Oct. 1, 2007). "Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*. 545 U.S. 209, 213 (2005).

different security classifications)*; see also Miles v. Konvalenka*, 791 F. Supp. 212 (N.D. Ill. 1992) (denial of coffee for inmates in segregation unit while providing it to inmates in general population did not violate equal protection). The plaintiff has failed to allege a plausible equal protection claim on this basis.

Prisoners do have a right to a nutritionally adequate diet under the Eighth Amendment, *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), and while a substantial deprivation of food may amount to a constitutional violation, missing a few meals or a certain food item does not. *See Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999), *Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999). Instead, the Eighth Amendment is implicated only when a prisoner is forced to endure deprivations of the "minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Plaintiff's claim that he did not get apple juice with breakfast falls short of satisfying this standard.

To the extent the plaintiff is trying to raise a Fourteen Amendment due process claim, the Constitution does not create a liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate is entitled to due process protections only when more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. The court cannot, under any stretch of the imagination, conclude that the lack of apple juice at breakfast constitutes an "atypical and significant hardship" under this standard. The plaintiff also asserts that prison officials violated internal prison policy in failing to provide him with apple juice, but even if this is true, it could not form the basis for a federal claim under 42 U.S.C. § 1983. *See Sobitan v.*

*Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (internal citation omitted); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws").

The plaintiff also raises a number of state law claims, but because the federal claims must be dismissed, the court will remand these claims to state court for further proceedings. *See Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.,* 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claims conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)."). Because the plaintiff has no plausible federal claim, his motions for class certification and appointment of counsel (DE 7, 8) will be denied as moot. However, he is free to renew these motions in state court if he feels such action is warranted.

For these reasons, the plaintiff's motion for leave to amend his complaint (DE 6) is **GRANTED**, and the clerk is **DIRECTED** to docket the proposed amended complaint (DE 6-1). The federal claims contained in the amended complaint (DE 6-1) are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A. The case is **REMANDED** to Allen Superior Court for further proceedings. The plaintiff's motion for appointment of counsel (DE 7) and motion for class certification (DE 8) are **DENIED** as moot.

**SO ORDERED** on September 24, 2013.

   s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division